Thomas Lether, OSB # 101708
LETHER LAW GROUP
1848 Westlake Ave N,
Seattle, WA  98109
T: 206-467-5444
F: 206-467-5544
tlether@letherlaw.com
*Attorneys for Plaintiff Artisan and Truckers Casualty Company*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| ARTISAN AND TRUCKERS CASUALTY COMPANY, a foreign insurer;<br><br>Plaintiff,<br><br>v.<br><br>TMT DEVELOPMENT CO., LLC, a limited liability company; D. PARK CORPORATION, an Oregon Corporation doing business as HAYDEN MEADOWS; MATTHEW CADY, an individual doing business as CORNERSTONE SECURITY GROUP; JEFFREY JAMES, an individual doing business as CORNERSTONE SECURITY GROUP; TJ LATHROM, an individual doing business as CORNERSTONE SECURITY GROUP; KARI NELSON, an individual, and KIONO NELSON as the Personal Representative of the ESTATE OF FREDDY NELSON, JR.; LOGAN GIMBEL, an individual; and TIFFANY WOLF, an individual;<br><br>Defendants. | Case No. 3:23-cv-14<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Artisan and Truckers Casualty Company (hereinafter "Progressive") submits the

following Complaint for Declaratory Relief pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

## I.  INTRODUCTION

1.1  This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Progressive seeks a determination that it does not owe a duty to defend or indemnify Cornerstone Security Group under policies of insurance issued by Progressive with respect to claims against it in *Estate of Freddy Nelson Jr. v. TMT Development Co. LLC et al.* Multnomah County Circuit Court, OR, case number 21CV40742 or *Wolf v. D. Park Corporation et al.*, Case No. 22CV31097 in the Multnomah County Circuit Court (collectively, the Underlying Lawsuits).

## II.  PARTIES

2.1  Progressive is a foreign insurer organized under the laws of the State of Ohio with a principal place of business in the State of Ohio.

2.2  Upon information and belief, all members of TMT Development Co., LLC (hereinafter "TMT") are residents and citizens of the State of Oregon.

2.3  Defendant D. Park Corporation, doing business as Hayden Meadows (hereinafter "D. Park"), is an Oregon Corporation doing business in Multnomah County, Oregon.

2.4  Defendant Matthew Cady, doing business as Cornerstone Security Group (hereinafter "Cady") is a resident of Clackamas County, Oregon.

2.5  Defendant Jeffrey James, doing business as Cornerstone Security Group (hereinafter "James") is a resident of Clackamas County, Oregon.

2.6  Defendant T.J. Lathrom, doing business as Cornerstone Security Group (hereinafter "Lathrom") was a resident of Multnomah County, Oregon.

2.7  Defendant Kari Nelson and decedent Freddy Nelson, Jr. were both adults, a married

couple, and residents of Multnomah County, Oregon.

2.8 Kiono Nelson is the duly appointed personal representative of the Estate of Freddy Nelson, Jr.

2.9 Defendant Logan Gimbel (hereinafter "Gimbel") is a resident of Clark County, Washington.

2.10 Defendant Tiffany Wolf (hereinafter "Wolf") is a resident of Multnomah County, Oregon.

### III.   JURISDICTION AND VENUE

3.1 This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity amongst the parties is complete.

3.2 The Court has jurisdiction over this Declaratory Judgment action pursuant to 28 U.S.C. § 2201 because there is an actual and justiciable controversy between the parties with respect to the existence of insurance coverage under the policies of insurance issued by Progressive. A judicial determination and declaration of the rights and obligations of the parties is necessary and appropriate at this time because Progressive has no adequate remedy at law which will resolve the current controversy.

3.3 Venue is proper with this Court pursuant to 28 U.S.C. § 1391 and local court rules as this case involves claims for insurance coverage stemming from an alleged loss occurring in Oregon, and underlying lawsuits is filed in Multnomah County Circuit Court, for the State of Oregon.

### IV.   FACTUAL BACKGROUND

**A. Background**

4.1     Progressive reasserts paragraphs 1.1- 3.3 as though fully set forth herein.

4.2     At the time of the incident giving rise to the Underlying Lawsuits, Defendants Cady, Lathrom, and James (collectively referred to as "Cornerstone") were doing business as Cornerstone Security Group. The Cornerstone held themselves out as a security business providing armed security.

4.3     In the spring of 2020, D. Park and TMT hired the Cornerstone to provide armed security for Lowe's Home Improvement located at 1160 N Hayden Meadows Drive in Multnomah Country, Oregon (hereinafter, "Lowe's").

4.4     At the time of the incident, Gimbel was employed by Cornerstone to work as an armed security professional.

4.5     On May 29, 2021, Freddy Nelson, Jr., and Kari Nelson (collectively, the "Nelsons") visited the Lowe's.

4.6     On the same day, Gimbel parked a vehicle owned by the Cornerstone perpendicular to the Nelsons' vehicle in the Lowe's parking lot.

4.7     Gimbel exited his vehicle to inform Freddy Nelson, Jr. that he was under arrest.

4.8     Gimbel approached the driver's side and attempted to open the driver's door. Finding it locked, Gimbel forced a pepper spray bottle through the cracked window and pepper sprayed inside the vehicle.

4.9     Gimbel subsequently fired four shots at Freddy Nelson, Jr., killing him (hereinafter, the "Subject Loss").

4.10    At the same time, Wolf was sitting in her parked car in the Lowe's parking lot

parked near the Nelson vehicle.

4.11    Wolf witnessed Gimbel raise his gun.

4.12    Upon seeing Gimbel raise his gun, Wolf got onto the floor of her car as Gimbel fired his gun.

B.    **The Underlying Lawsuits**

4.13    On October 19, 2021, Kari Nelson and Kiono Nelson, as a representative of the Estate of Freddy Nelson, Jr., filed *Nelson v. TMT Development Co., LLC et al.*, Case No. 21CV40742 in the Multnomah County Circuit Court (hereinafter, the "Nelson Lawsuit"). The Nelson Lawsuit is currently ongoing.

4.14    In the Nelson Lawsuit, the Nelsons assert that Cornerstone was negligent in hiring, training, and supervising Gimbel because Gimbel was not licensed to carry a firearm at the time of the incident.

4.15    The Nelson Lawsuit alleges claims against Cornerstone for negligence, negligence per se, wrongful death, false imprisonment, and negligent infliction of emotional distress.

4.16    On September 13, 2022, Wolf filed *Wolf v. D. Park Corporation et al.*, Case No. 22CV31097 in the Multnomah County Circuit Court (hereinafter, the "Wolf Lawsuit"). The Wolf Lawsuit is currently ongoing.

4.17    The Wolf Lawsuit alleges claims against Cornerstone for negligence, *respondeat superior* liability for assault, and aider and abettor liability.

C.    **Progressive's Investigation**

4.18    Cornerstone reported the Nelson Lawsuit to Progressive on or about February 11,

2022. Thereafter, Progressive promptly opened a claim and initiated its claims investigation.

4.19   Progressive timely issued a reservation of rights letter to Cornerstone following notice of the Nelson Lawsuit.

4.20   Progressive received a policy limit demand from Nelsons related to the Subject Loss.

4.21   On October 20, 2022, Wolf joined the policy limit demand issued to Progressive by the parties to the Nelson Lawsuit.

**D.     The Commercial Auto Policy Issued by Progressive**

4.22   Progressive issued commercial auto insurance policy number 00448876-02 effective between February 18, 2021, and February 18, 2022 (the "Policy") to the named insured Cornerstone Security Group.

4.23   The Policy has a combined single limit of liability to others of $1,000,000 bodily injury and property damage liability.

4.24   Gimbel is a rated driver under the Policy.

4.25   The Declarations page of the Policy lists a 2010 Ford Crowne Victoria, with VIN 2FABP7BV4AX141541.

4.26   Gimbel was driving the insured vehicle at or around the time of the Subject Loss.

4.27   With respect to Part I- Liability To Others, the Policy provides as follows:

<u>**PART I - LIABILITY TO OTHERS**</u>

**INSURING AGREEMENT - LIABILITY TO OTHERS**

Subject to the Limits of Liability, if **you** pay the premium for liability coverage, **we** will pay damages for **bodily injury, property damage,** and **covered pollution cost or expense,** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership,

maintenance or use of an **insured auto.** However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

    A. When used in Part I - Liability to Others, **insured** means:

        1. **You** with respect to an **insured auto**.

        2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:

            (a) A person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.

            (b) A person, other than one of **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), officers or directors (if **you** are a corporation), or a lessee or borrower or any of their employees, while he or she is moving property to or from an **insured auto**.

            (c) The owner or anyone else from whom the insured auto is leased, hired, or borrowed unless the insured auto is a trailer connected to a power unit that is an insured auto. However, this exception does not apply if the insured auto is specifically described on the declarations page.

        For purposes of this subsection A.2., an insured auto you own includes any auto specifically described on the declarations page.

        3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this

**Part I - Liability to Others**.

Form 6912 OR (02/19) as amended by 4881 OR (05/11).

4.28    The Policy contains the following exclusions:

Coverage under this Part I, including **our** duty to defend, does not apply to:

1.  **Expected or Intended Injury**

    **Bodily injury** or **property damage** either expected by or caused intentionally by or at the direction of any **insured**.

[…]

15. **Criminal Acts**

    **Bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of an **insured**. This exclusion applies regardless of whether that **insured** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

Form 6912 OR (02/19) as amended by 4881 OR (05/11).

4.29    Progressive reserves the right to assert any other policy language or policy coverage

forms that may be potentially applicable to the claims alleged in the Underlying Lawsuits.

4.30    The Policy contains the following limits of liability provisions:

**LIMIT OF LIABILITY**

**We** will pay no more than the Limit of Liability shown on the **declarations page** for this coverage for the **insured auto** involved in the **accident** regardless of:
    1. the number of premiums paid;
    2. the number of **insured autos** or trailers shown on the **declarations page**;
    3. the number of policies issued by **us**;
    4. the number of vehicles or **insureds** involved in an **accident**; or
    5. the number of claims or lawsuits arising out of an **accident**,

Form OR 6912 (02/19) at 13-14.

4.31    The Policy contains the following provisions regarding an insured's duties in the

event of a loss or accident:

### DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each **accident** or **loss** even if **you** or the person seeking coverage is not at fault. Refer to your policy documents for the claims phone number.

**You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the **accident** or **loss**, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

**You,** or any other person or organization claiming coverage as an insured, must also notify the police within 72 hours or as soon as practicable if:

- the owner or operator of a vehicle involved in the **accident** cannot be identified; or

- theft or vandalism has occurred.

A person seeking coverage must:

1. cooperate with **us** in any matter concerning a claim or lawsuit;

2. provide any written proof of loss **we** may reasonably require;

3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you**, a **relative**, or any person claiming coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;

4. promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit;

5. attend hearings and trials as **we** require;

6. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require;

7. authorize **us** to obtain medical and other records;

8. take reasonable steps after a **loss** to protect the **insured auto** from further **loss**. **We** will pay reasonable expenses incurred in

providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;

9. allow **us** to have the damage to an **insured auto** or other **auto** involved in an **accident** or **loss** inspected and appraised before its repair or disposal; and

10. authorize **us** access to **your** business or personal records as often as **we** may reasonably require.

6912 (06/10) as amended by 4881 OR (05/11) at 1.

    4.32    The following definitions are pertinent to the foregoing provisions:

**GENERAL DEFINITIONS**

**The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.**
1. "**Accident**" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage**.

2. "**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

3. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

[…]

5. "**Insured auto**" or "**your insured auto**" means:
    a. Any **auto** specifically described on the **declarations page**; or

    b. An additional **auto** for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date **you** become the owner if:

        (i) **you** acquire the **auto** during the policy period

                shown on the **declarations page**;

                (ii) **we** insure all **autos** owned by **you** that are used in **your** business;

                (iii) no other insurance policy provides coverage for that **auto**; and

                (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

If **you** add any coverage, increase **your** limits or make any other changes to this policy during the 30 day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

With respect to Part I - Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

[…]

9. "**Loss**" means sudden, direct and accidental loss or damage.

[…]

20. "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.

21. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

Form 6912 OR (02/19) at 2-6.

## V. ACTUAL AND JUSTICIABLE CONTROVERSIES EXIST AS TO COVERAGE UNDER THE POLICY

    5.1    Progressive reasserts paragraphs 1.1 through 4.32 as though fully set forth herein.

    5.2    The Policy provides coverage for "bodily injury," "property damage", and covered

pollution cost or expense for which an insured person becomes legally responsible because of an "accident" arising out of the ownership, maintenance, or use of an "insured auto."

5.3  An actual and justiciable controversy exists as to whether Gimbel qualifies as an "insured" under the Policy.

5.4  The Policy defines "accident" as a sudden, unexpected, and unintended event, or a continuous or repeated exposure to that event, which causes bodily injury or property damage.

5.5  There is an actual and justiciable controversy as to whether Gimbel's alleged actions to arrest, hold or otherwise detain Freddy Nelson, Jr. and the subsequent discharging of a firearm were an "accident" under the terms and conditions of the Policy.

5.6  There is an actual and justiciable controversy as to whether Gimbel's alleged actions to arrest, detain, and shoot Freddy Nelson, Jr. fall within the scope of the ownership, maintenance, or use of an "insured auto."

5.7  There is an actual and justiciable controversy as to whether Cornerstone's alleged negligent hiring, training or, supervising Gimbel fall within the scope of the ownership, maintenance, or use of an "insured auto."

5.8  The Policy excludes coverage for bodily injury or property damage either expected by or caused intentionally by or at the direction of any insured.

5.9  There is an actual and justiciable controversy as to whether the "bodily injury" alleged in the Underlying Lawsuits were either expected by or caused intentionally by or at the direction of Gimbel.

5.10  There is an actual and justiciable controversy as to whether the "bodily injury" alleged in the Underlying Lawsuits were either expected by or caused intentionally by or at the

direction of Cornerstone.

5.11   The Policy excludes coverage for bodily injury or property damage caused by, or reasonably expected to result from, a criminal act or omission.

5.12   There is an actual and justiciable controversy as to whether the "bodily injury" alleged in the Underlying Lawsuits were caused by, or reasonably expected to result from, a criminal act or omission of Gimbel.

5.13   Progressive reserves the right to assert any other exclusions or grounds for which coverage for the claims against Cornerstone may be excluded under the Policy.

## VI.   CAUSE OF ACTION FOR DECLARATORY RELIEF

6.1   Progressive reasserts paragraphs 1.1 through 5.13 and incorporates the same by reference as if fully set forth herein.

6.2   Actual and justiciable controversies exist as the rights and duties of the parties under the Policy.

6.3   Actual and justiciable controversies exist as to whether Progressive owes any defense obligation to Cornerstone for the claims in the Underlying Lawsuits.

6.4   Pursuant to 28 U.S.C. §§ 2201 and 2202, Progressive requests that this Court grant declaratory relief in its favor and enter a judicial determination that Progressive does not have an obligation to provide a defense to Cornerstone or Gimbel under the Policy for the claims asserted against it in the Underlying Lawsuits.

6.5   Actual and justiciable controversies exist as to whether Progressive owes any indemnity obligation to Cornerstone for the claims in the Underlying Lawsuits.

6.6     Pursuant to 28 U.S.C. §§ 2201 and 2202, Progressive requests that this Court grant declaratory relief in its favor and enter a judicial determination that Progressive does not have an obligation to provide any indemnity coverage to Cornerstone under the Policy for the claims asserted against it in the Underlying Lawsuits.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Progressive, having specifically alleged the foregoing, now requests the following relief:

1. For a declaration of the rights and obligations of the parties under the Policy.

2. For a declaration that Progressive does not owe Cornerstone a defense obligation under the Policy for any claims asserted against it in the Underlying Lawsuits.

3. For a declaration that Progressive does not owe Cornerstone any indemnity obligation under the Policy for any claims asserted against it in the Underlying Lawsuit.

4. For attorney fees and costs allowed by statute and law.

5. For all interest allowed by law.

6. For other and further relief as the Court deems just and equitable.

DATED this 4th day of January 2023.

                                        LETHER LAW GROUP

                                        *s/ Thomas Lether*
                                        Thomas Lether, OSB #101708
                                        1848 Westlake Ave N., Suite 100
                                        Seattle, WA 98109
                                        P: 206-467-5444  F: 206-467-5544

COMPLAINT FOR DECLARATORY RELIEF – 14

tlether@letherlaw.com
*Attorneys for Plaintiff Artisan and Truckers Casualty Company*

COMPLAINT FOR DECLARATORY RELIEF – 15

LETHER LAW GROUP
1848 WESTLAKE AVENUE N. STE. 100
SEATTLE, WASHINGTON 98109
P: (206) 467-5444  F: (206) 467-5544