IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ARTISAN AND TRUCKERS CASUALTY COMPANY,<br><br>        Plaintiff,<br>   v.<br><br>TMT DEVELOPMENT CO., LLC, D. PARK CORPORATION d/b/a HAYDEN MEADOWS, MATTHEW CADY d/b/a CORNERSTONE SECURITY GROUP, JEFFREY JAMES d/b/a CORNERSTONE SECURITY GROUP, TJ LATHROM d/b/a CORNERSTONE SECURITY GROUP, KARI NELSON, KIONO NELSON, as the personal representative on behalf of ESTATE OF FREDDY NELSON JR., and LOGAN GIMBEL,<br><br>        Defendants. | Case No.: 3:23-cv-00014-AN<br><br>OPINION AND ORDER |

Plaintiff Artisan and Truckers Casualty Company Co. ("Artisan") brought this action on January 4, 2023 against defendants TMT Development Co., LLC ("TMT"), D. Park Corporation ("D. Park"), Matthew Cady, Jeffrey James, TJ Lathrom, Kari Nelson, Logan Gimbel, and Tiffany Wolf, seeking declaratory relief that it does not have a duty to defend or indemnify defendants Matthew Cady, Jeffrey James, and TJ Lathrom (d/b/a "Cornerstone Security Group" or "Cornerstone" and, collectively, the "Cornerstone defendants") in two underlying state course actions: *Estate of Freddy Nelson Jr. v. TMT Development Co. LLC et al.*, case number 21CV40742 in the Multnomah County Circuit Court (the "Nelson Lawsuit"), and *Wolf v. D. Park Corporation et al.*, case number 22CV31097 in the Multnomah County Circuit Court (the "Wolf Lawsuit").

Plaintiff and Cornerstone filed cross-motions for summary judgment. While the motions were being briefed, Cornerstone filed motions to stay plaintiff's claim with regard to the Wolf Lawsuit and plaintiff's indemnification claim with regard to the Nelson Lawsuit. After reviewing the parties' pleadings,

1

the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons stated herein, the motions to stay are GRANTED. Plaintiff's motion for summary judgment is DENIED with regard to the duty to defend in the Nelson Lawsuit. Cornerstone's motion for partial summary judgment is GRANTED with regard to the duty to defend in the Nelson Lawsuit and DENIED with regard to attorney fees.

## LEGAL STANDARD

**A.    Motion to Stay**

A district court has the inherent power to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). It may stay an action pending the resolution of separate proceedings "which bear upon the case," regardless of whether those proceedings are controlling in the instant action. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979).

In determining whether proceedings should be stayed, the court must weight three competing interests:

> "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55). The movant bears the burden of demonstrating that the three factors weigh in favor of a stay. *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

**B.    Motion for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). Material facts are those which might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Materiality is determined using substantive law. *Id.* A dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Id.*

When a moving party demonstrates the absence of a genuine dispute as to any material fact, the nonmoving party that bears the burden at trial must show in response that there is evidence creating a genuine dispute as to any material fact. *Rivera*, 395 F.3d at 1146 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

## BACKGROUND

A.    **Factual Background**

1.    *Underlying Incident*

D. Park and TMT hired Cornerstone to provide armed security guards at the Lowe's Home Improvement Store ("Lowe's") at 1160 N Hayden Meadows Drive in Portland, Oregon. First Am. Compl ("FAC"), ECF [36], ¶ 4.3. Cornerstone employed Gimbel as a security guard. FAC ¶ 4.5. The second amended complaint ("SAC") in the Nelson Lawsuit alleges that on May 29, 2021, Gimbel parked his Cornerstone-owned vehicle perpendicular to the vehicle of Freddy Nelson, Jr. and Kari Nelson in the Lowe's parking lot, exited his vehicle, and informed Freddy Nelson, Jr. that he was under arrest. FAC ¶¶ 4.5-4.7; Decl. of Margaret E. Schroeder in Supp. of Cornerstone Defs. Mot. for Partial Summ. J. ("Schroeder Decl."), ECF [63], Ex. 3 ("SAC"), ¶¶ 28-31. According to the underlying complaint, Gimbel approached the driver's side of the Nelsons' vehicle, attempted to open the door, and sprayed pepper spray through the opened window. FAC ¶ 4.8; SAC ¶ 32. Gimbel then walked to the front of the car, raised a pistol, told the Nelsons not to move, and fired four shots at Freddy Nelson, Jr., killing him. FAC ¶ 4.9; SAC ¶¶ 34-35. Wolf, who was sitting in her car nearby, alleges that she witnessed the incident, was "directly in the line of fire," and, fearing for her life, threw herself to the floor of her car. FAC ¶ 4.12; Decl. of Chris Huelsman in Supp. of Pl. Mot. for Summ. J. ("Huelsman Decl."), ECF [47], Ex. 3, ¶¶10-12.

On October 19, 2021, Kari and Kiono Nelson filed the Nelson Lawsuit on behalf of the Estate of Freddy Nelson, Jr. *See* Huelsman Decl., Ex. 2. The SAC, filed on July 5, 2023, alleges negligent employment and wrongful death against the Cornerstone defendants, negligence and wrongful death against Gimbel and the Cornerstone defendants under a theory of vicarious liability, negligence per se against the Cornerstone defendants, negligence per se against Gimbel, false arrest/imprisonment against Gimbel and the Cornerstone defendants under a theory of vicarious liability, negligent infliction of emotional distress, and negligence and personal injury. SAC ¶¶ 46-92. In the fifth claim, which is for false arrest and imprisonment, the plaintiffs allege that "Defendant Gimbel confined Plaintiffs by parking the Cornerstone vehicle in front of the Nelson vehicle[;]" that "Defendant Gimbel intended to park the Cornerstone vehicle in front of the Nelson vehicle[;]" that "Defendant Gimbel negligently failed to move the Cornerstone vehicle before exiting the vehicle" and that negligent failure "continued to confine the Nelsons[;]" and that as a result of Gimbel's conduct, the plaintiffs suffered damages. *Id.* ¶¶ 66-72. They allege that Cornerstone is vicariously liable for those damages as Gimbel's employer. *Id.* ¶ 71.

On September 13, 2022, Wolf filed the Wolf Lawsuit, bringing claims against Cornerstone for negligence, *respondeat superior* liability for assault, and aider and abetter liability. FAC ¶¶ 4.16-4.17; Huelsman Decl., Ex. 3, ¶¶ 7-62.

Cornerstone reported the Nelson Lawsuit to Artisan on February 11, 2022. FAC ¶ 4.18; Huelsman Decl. ¶ 4; Schroeder Decl., Ex. 1. Artisan opened a claim and has been defending that lawsuit pursuant to an express reservation of rights. FAC ¶¶ 4.19. Wolf and the Nelsons filed policy demand limits. *Id.* ¶¶ 4.20-4.21. On May 9, 2023, Gimbel was found guilty of murder in the second degree, unlawful use of a weapon, and two counts of unlawful use of mace in the second degree in Multnomah County Circuit Court. Decl. of Andrew T. Burns in Supp. of Def. Gimbel's Resp. to Pl. Mot. for Summ. J., ECF [66], Ex. 3.

2.   *The Insurance Policy*

Plaintiff issued a commercial auto insurance policy to Cornerstone, number 00448876-02 (the "Policy"), with a combined singe liability limit of $1,000,000.00 that was in effect at the time of the

4

incident. FAC ¶¶ 4.22-4.26; *see* Huelsman Decl., Ex. 1 ("Policy"). The Policy lists a 2010 Ford Crown Victoria with a VIN 00448876-02 as an insured vehicle and lists Gimbel as a rated driver. FAC ¶ 4.25; Policy 4 (all references to ECF pagination).

The Policy covered "damages for bodily injury, property damage, and covered pollution cost or expense, for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance, or use of an insured auto." FAC ¶ 4.27; Policy 17. An accident is defined as "a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes bodily injury or property damage." FAC ¶ 4.28; Policy 13.

The policy excludes coverage for "[b]odily injury or property damage either expected by or caused intentionally by or at the direction of the insured." FAC ¶ 4.29; Policy 21.

Under the section "Part 1 – Liability to Others," subsection "Additional Payments," the Policy states that in addition to the limited liability policy, plaintiff "will" pay "reasonable expenses incurred by an insured at our request, including loss of earnings up to $250 a day[.]" Policy 20.

**B.     Procedural Background**

Plaintiff filed the amended complaint on May 31, 2023. The Cornerstone defendants filed an answer with counterclaims, alleging breach of contract for Artisan's duty to defend Cornerstone in the underlying lawsuits and seeking attorney fees incurred for defending against the claim for declaratory relief. Answer & Countercls., ECF [40]. The Cornerstone defendants allege that Artisan breached its duty to defend in the underlying lawsuits, that Cornerstone had been forced to hire defense counsel in the Nelson Lawsuit, and that Artisan had failed to pay for the costs incurred as defense fees. *Id.* ¶¶ 12-20.

Plaintiff filed a motion for summary judgment on September 12, 2023, requesting declaratory judgment that it does not owe coverage in the underlying lawsuits. On October 2, 2023, the Cornerstone defendants filed two motions to stay portions of the case. The case was stayed pending ruling on the scope of the motion for summary judgment.

The Cornerstone defendants then filed their own motion for partial summary judgment as well as partial responses to plaintiff's motion for summary judgment, omitting briefing on the stayed issues.

## DISCUSSION

A.   **Motions to Stay**

The first motion requests to stay plaintiff's declaratory claim on both the duty to defend and the duty to indemnify with regard to the Wolf Lawsuit until the Wolf Lawsuit is reinstated or refiled, arguing that because the lawsuit was dismissed for failure to prosecute, there was no live case or controversy. Cornerstone Defs. Mot. to Stay Pl. Declaratory Claim with Regard to the Wolf Lawsuit ("Mot. to Stay Regarding Wolf Lawsuit"), ECF [49], at 3. The second requests to stay plaintiff's declaratory claim on indemnity coverage only with regard to the Nelson Lawsuit pending resolution of the Nelson Lawsuit, arguing that the factual basis underlying indemnity liability must be established in that action before it is appropriate to litigate in this action. Cornerstone Defs. Mot. to Stay Pl. Declaratory Claim on Indemnity Coverage with Regard to the Nelson Lawsuit ("Mot. to Stay Regarding Nelson Lawsuit"), ECF [51], at 3.

   1.   *The Wolf Lawsuit*

The Cornerstone defendants argue that the question of the duty to defend and indemnify in the Wolf Lawsuit is moot because, having been dismissed for want of prosecution, there is no case or controversy. Mot. to Stay Regarding Wolf Lawsuit 3; *see* Decl. of Margaret E. Schroeder in Supp. of Cornerstone Defs. Mot. to Stay Regarding Wolf Lawsuit, ECF [50], Ex. 1 (general judgment of dismissal for want of prosecution in the Wolf Lawsuit dated September 26, 2023).

Plaintiff brings its motion for summary judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, which requires "a case or actual controversy." Declaratory relief is appropriate when "the facts alleged, under all circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *Ed Niemi Oil Co., Inc. v. Exxon Mobil Corp.*, 2013 WL 957007, at *11 (D. Or. Mar. 11, 2013) (quoting *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1192 (9th Cir. 2000)). "[I]f events subsequent to the filing of the case resolve the parties' dispute," ordinarily the court must dismiss the case. *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1087 (9th Cir.2011).

The Wolf Lawsuit was dismissed and has not been reinstated. As the two-year statute of

limitations to bring a torts claim has passed, it is unlikely that Wolf will be able to reinstate her claim, should she wish to in the future.

The *CMAX* factors weigh in favor of staying the summary judgment motion as it relates to the Wolf Lawsuit. Neither party has argued that it will suffer significant hardship as a result of staying or proceeding on the claims related to the Wolf Lawsuit. Plaintiff argues that it has already provided Cornerstone with a defense in the Wolf Lawsuit and will be prejudiced by a stay because it will require plaintiff to continue to provide a defense indefinitely. However, Wolf is now statutorily barred from reinstating her claims, which limits plaintiff's risk. It is not an efficient use of the Court's or the parties' time, in the interest of the orderly course of justice, to brief and adjudicate what is likely a moot claim. The motion to stay regarding the Wolf Lawsuit is, accordingly, granted. If the parties cannot resolve the claims related to the Wolf Lawsuit on their own, they may seek leave to file a subsequent motion for summary judgment or a motion to dismiss those claims as moot.

2.  *The Nelson Lawsuit*

Defendants argue that the issue of whether plaintiff must indemnify defendants should be stayed while the underlying Nelson Lawsuit proceeds because liability, and the factual basis for any such liability, has yet to be determined in the underlying lawsuit, and because the issue puts the insured in a conflicted position. Mot. to Stay Regarding Nelson Lawsuit 3.

Other courts in this district have stayed summary judgment motions on the duty to indemnify before the underlying litigation is resolved, finding such motions premature. *See, e.g.*, *Charter Oak Fire Ins. Co. v. Interstate Mech., Inc.*, 958 F. Supp. 2d 1188, 1215 (D. Or. 2013) ("Courts typically determine the duty to indemnify only after the underlying liability action has been completed. In that scenario, the court decides whether an insurer has a duty to indemnify its insured by looking to the evidence submitted at trial in the underlying liability case to determine whether the judgment was based on a claim covered under the insurance policy at issue . . . . Consequently, in some instances district courts find it premature to consider summary judgment motions on the duty to indemnify before the underlying liability action has been completed."), *vacated by settlement*, No. 3:10-CV-01505-PK, 2014 WL 9849553 (D. Or.

7

Jan. 6, 2014); *Siri Singh Sahib Corp. v. Cincinnati Specialty Underwriters Ins. Co.*, No. 3:21-CV-01758-YY, 2023 WL 7923801, at *3 (D. Or. Jan. 18, 2023) (staying litigation regarding the duty to indemnify pending resolution of the underlying lawsuit). For the same reason, the motion to stay regarding the duty to indemnify in the Nelson Lawsuit is granted. The parties may renew their motions for summary judgment on the duty to indemnify in the Nelson Lawsuit, if necessary, after resolution of the Nelson Lawsuit.

**B.      Motions for Summary Judgment**

Having addressed the motions to stay portions of the lawsuit, the motions for summary judgment are limited in scope. Plaintiff moves for a finding that, as a matter of law, it does not have a duty to defend Cornerstone or Gimbel in the Nelson Lawsuit. Pl. Mot. for Summ. J. ("Pl. MSJ"), ECF [46], at 2. Cornerstone moves for a finding that, as a matter of law, plaintiff does have a duty to defend Cornerstone in the Nelson Lawsuit and a grant of summary judgment in favor of Cornerstone's counterclaim for attorney fees. Cornerstone Defs. Mot. for Summ. J. ("Cornerstone MSJ"), ECF [62], at 1.

1.      *Duty to Defend*

Oregon law applies to the contract at issue in this case. *Alexander Mfg. v. Ill. Union Ins. Co.*, 560 F.3d 984, 986 (9th Cir. 2009). In Oregon, the interpretation of an insurance contract is a question of law. *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 649, 147 P.3d 329 (2006) (citing *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469, 836 P.2d 703 (1992)). A court determines an insurer's duty to defend a lawsuit by looking only to the facts alleged in the underlying complaint and to the text of the insurance policy. *Ledford v. Gutoski*, 319 Or. 397, 400, 877 P.2d 80 (1994). First, the court must determine whether the complaint contains allegations of covered conduct. *Abrams v. Gen. Star Indem. Co.*, 335 Or. 392, 400, 67 P.3d 931 (2003). If it does, then the insurer has a duty to defend, even if the complaint also includes allegations of excluded conduct. *Id.* If the complaint does not contain allegations of covered conduct, then the insurer has no duty to defend. *Id.*; *see also Rogowski v. Safeco Ins. Co. of Or.*, 306 Or. App. 505, 510, 473 P.3d 111 (2020) ("If the complaint asserts a claim covered by the policy, the insurer has a duty to defend, even if the complaint also asserts claims that fall outside the policy's coverage.").

Regardless of the presence of ambiguity or lack of clarity in the complaint, the key question is whether the court can reasonably interpret the allegations to include an incident or injury that falls within the coverage of the policy. *Bresee Homes, Inc. v. Farmers Ins. Exch.*, 353 Or. 112, 117, 293 P.3d 1036 (2012). "[A]ny doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action will be resolved in the insured's favor." *Minnis v. Or. Mut. Ins. Co.*, 162 Or. App. 198, 209, 986 P.2d 77 (1999) (internal quotation marks and citation omitted).

There is no duty to defend when a criminal conviction incontrovertibly establishes the insurer does not cover an injury. *Allstate Ins. Co. v. Morgan*, 123 F. Supp. 3d 1266, 1276 (D. Or. 2015) (citing *Casey v. Nw. Sec. Ins. Co.*, 260 Or. 491, 492, P.2d 208 (1971)); *see also State Farm Fire & Cas. Co. v. Parker*, 167 Or. App. 413, 416, 1 P.3d 498 (2000) ("A criminal conviction may conclusively establish that an insured engaged in 'intentional' conduct, thus triggering an insurance policy exclusion for intentional acts.").

The parties do not dispute that bodily injury occurred but disagree on whether the allegations in the SAC describe an "accident," whether that accident was "arising out of the ownership, maintenance, or use of an insured auto," and whether it is subject to the expected or intended injury exclusion under the terms of the Policy.

      a.      Arising Out of the Ownership, Maintenance, or Use of an Insured Auto

Under the terms of the Policy, it is not sufficient that damages result from an accident for which an insured becomes legally responsible. The accident must be "arising out of the ownership, maintenance, or use of an insured auto." Plaintiff argues that the shooting was not an "accident" as defined under the policy because it did not arise out of the "ownership, maintenance or use" of an insured auto. Pl. MSJ 8-9.

Under Oregon law, the focus of inquiry is "whether the injury resulted from 'some act wholly disassociated from and independent of the vehicle's use.'" *Worldwide Underwriters Ins. Co. v. Jackson*, 121 Or. App. 292, 295, 855 P.2d 166 (1993) (quoting *Jordan v. Lee*, 76 Or. App. 472, 475, 709

9

P.2d 752 (1985)). This is a fact-specific inquiry. Oregon courts have previously considered whether various fact patterns support a finding that an accident arose from the ownership, maintenance, or use of an insured vehicle. In *Jackson*, the court found that injuries from a shooting in which the assailant used the vehicle to approach the victim and to avoid detection were not from an accident arising from the use of an insured auto because the firing of the gun was wholly dissociated from the vehicle's use. The court found it "immaterial that the vehicle may have facilitated the shooting and the escape" because "[i]ts use was not the 'direct cause' of the shooting." *Jackson*, 292 Or. App. at 295. In *Jordan*, the court found that injury was not arising out of the ownership, maintenance, or use of an insured trailer vehicle when a child found a gun stored in the vehicle and accidentally shot another child napping in the trailer. The court held that handling of the gun was "an act independent of the trailer's use." *Jordan*, 76 Or. App. at 475.

By contrast, the Oregon Supreme Court found in *Oakridge Community Ambulance Service, Inc. v. U.S. Fidelity & Guaranty Co.* that allegations of negligence in maintaining or operating an ambulance led to "failure to have an ambulance at the scene of the accident within a reasonable period of time," and that the waiting injured person died as a result, were sufficient to create a causal connection with the insured ambulance. 278 Or. 21, 23, 563 P.2d 164 (1977). In *De Zafra v. Farmers Insurance Co.*, the court found that an injury caused by a drive-by shooting was "arising out of" the use of an insured vehicle because the vehicle was used to approach with speed and surprise and maximize the likelihood of injury. 270 Or. App. 77, 86, 346 P.3d 652 (2015).

The allegations in the SAC that mention the insured vehicle fall into two categories: those relating to the manner in which Gimbel approached and interacted with the Nelsons before pepper spraying the Nelsons and shooting Freddy Nelson, Jr., and those relating to Gimbel's alleged false arrest and imprisonment of the Nelsons. The former allegations more closely resemble those in *Jackson* and *Jordan*. Although Gimbel used the insured vehicle to approach the Nelsons, his subsequent exit from the vehicle, approach to the Nelsons' car on foot, and engagement with the Nelsons greatly attenuates the causal link between the vehicle and the incident. The acts of discharging mace in the Nelsons' vehicle, then raising the pistol and shooting at Freddy Nelson, Jr., are wholly dissociated and independent of the use of the insured

vehicle. The damages resulting from this alleged conduct do not arise out of the ownership, maintenance, or use of an insured auto.

The allegations of false arrest and imprisonment are more closely related to the use of the vehicle. Gimbel "confined Plaintiffs by parking the Cornerstone vehicle in front of the Nelson vehicle," "intended to park the Cornerstone vehicle in front of the Nelson vehicle," and "negligently failed to move the Cornerstone vehicle before exiting the vehicle [and] confronting Freddy Nelson." SAC ¶¶ 66-68. To the extent that the Nelsons plead damages resulting from the false arrest and imprisonment, those arise out of the use of the insured vehicle.

   b. Accident

Under the terms of the policy, an accident must be "unintended." When determining the meaning of "accident" in an insurance policy under Oregon law, "the proper focus of the inquiry is the injurious result, not the conduct leading to that result." *Chale v. Allstate Life Ins. Co.*, 353 F.3d 742, 746 (9th Cir. 2003). The Court must, therefore, focus on whether the injuries to the Nelsons for which Cornerstone and Gimbel may be held liable in the SAC were intended by Cornerstone or Gimbel.

A court will "only infer that the insured had a subjective intent to cause harm or injury as a matter of law when such subjective intent is the only reasonable inference that may be drawn from the insured's conduct." *Allstate Ins. Co. v. Stone*, 319 Or. 275, 278-79, 876 P.2d 313 (1994). "The court may infer subjective intent to harm or injury in cases where subjective intent to harm or injure is a necessary element to establish liability in the underlying action." *Allstate Ins. Co. v. Fulmer*, No. CIV. 04-3019-CO, 2004 WL 2647624, at *4 (D. Or. Nov. 19, 2004), *report and recommendation adopted as modified*, 2005 WL 67071 (D. Or. Jan. 11, 2005). "Subjective intent to cause harm is not a necessary element to establish liability in a negligence action." *Id.* (citing *Ledford*, 319 Or. at 405); *Farmers Ins. Co. of Or. v. Limbocker*, 109 Or. App. 130, 135, 818 P.2d 527 (1991) (finding where insured pleaded guilty to assault for striking person who tapped him on the arm at a tavern, and where plaintiff in underlying lawsuit included claim for relief that insured struck her negligently, neither nature of insured's act nor fact of assault plea necessarily required inference of intent).

i.  *Gimbel*

The SAC brings the fourth claim (negligence and wrongful death), sixth claim (negligence per se), seventh claim (false arrest/imprisonment), eighth and ninth claims (negligent infliction of emotional distress), and tenth claim (negligence and personal injury as to Kari Nelson) against Gimbel. Of these, the parties focus on the claims that arguably involve the use of the insured vehicle. Plaintiff argues that there is no coverage under the Policy for Gimbel because his shooting, as alleged in the SAC was intentional, and therefore not an accident. Pl. MSJ 9. As evidence of Gimbel's intent, plaintiff raises both the factual allegations in the SAC and Gimbel's conviction. *Id.* Plaintiff compares this case to *State Farm Fire & Casualty Co. v. Green*, 139 Or. App. 51, 911 P.2d 357 (1996). At issue in *Green* was whether there was sufficient evidence to find an intent to injure for purposes of interpreting the term "accident" in an insurance policy where the insured took out a gun at a party, fired it into a crowd three times, and later pleaded guilty to assault in the second degree. The Oregon Court of Appeals found that the trial court had properly permitted the jury to infer intent where the facts—that the insured "carried a gun to the party and took it out despite efforts to restrain him[,] . . . aimed the gun into a crowd of people and fired it three times[,] . . . [and] knew the gun was loaded and knew there were people in front of the house"—were sufficient to permit the inference, but the inference could not be compelled as a matter of law. *Id.* at 55-56.

Certain of the claims in the SAC are based on Gimbel's pepper spraying and shooting of Freddy Nelson, Jr. Gimbel argues that based on his conviction for reckless discharge of mace, the Court should find that there is a possibility that he unintentionally discharged the mace and that he unintentionally confined the Nelsons with the insured vehicle. Def. Gimbel's Resp. ("Gimbel Resp."), ECF [65], at 5. As discussed above, these claims related to the mace and shooting do not trigger coverage because they do not arise out of the use of an insured vehicle. In addition, the only reasonable inference from the allegations in the SAC and from Gimbel's convictions are that Gimbel acted intentionally in shooting Freddy Nelson, Jr. Some of the claims in the SAC are for negligence. However, "reliance on the labels placed on counts in a complaint alone is not sufficient to determine the duty to defend. Rather, it is the 'conduct' alleged that is critical to the determination." *L & D of Or., Inc. v. Am. States Ins. Co.*, 171 Or. App. 17, 20, 14 P.3d 617

(2000) (citation omitted); *see Casey*, 260 Or. at 492 (finding that where a criminal conviction "conclusively established that the injury was intentionally inflicted," there was no duty to defend even when plaintiff in the underlying action included a claim for negligence).

The claim for false arrest and imprisonment alleges that Gimbel both "intended" to park the insured vehicle in front of the Nelson's vehicle and that he "negligently" failed to move the insured vehicle before exiting it. SAC ¶¶ 67-68. While the SAC states that Gimbel "confined" the Nelsons as a result, it does not allege a specific intent. *Id.* ¶ 66. The SAC, as pleaded, leaves open the possibility that while Gimbel intended to park his vehicle in front of the Nelson's vehicle, he did not intend to confine the Nelsons or cause the damages resulting from that confinement, triggering coverage as an "unintended" accident. Oregon courts have previously found that the injuries resulting from false imprisonment could be unintentional for purposes of construing an insurance policy. In *Mutual of Enumclaw Insurance Co. v. Gutman*, the Oregon Court of Appeals affirmed a grant of summary judgment finding that plaintiff had a duty to defend insureds in an action that included a claim for false imprisonment. 172 Or. App. 528, 21 P.3d 101 (2001). In that case, the insurance policy specifically defined bodily injury to include "personal injury," which explicitly included injury arising out of "false arrest, detention or imprisonment, or malicious prosecution." *Id.* at 533. The court found that, although the false imprisonment itself was intentional, the infliction of emotional distress, anxiety, and other pleaded damages was not intentional, and the occurrence was therefore an unintended "accident" under the plan. *Id.* at 534-35.

Plaintiff argues that, unlike *Gutman*, in which the insurance policy at issue was a homeowner's policy which specifically included coverage for injuries arising out of false arrest, detention or imprisonment, the Policy at issue in this case is an auto policy that contains no such provision. Pl. Reply, ECF [69], at 8-9. Plaintiff also notes that the claim seeks "damages" but does not specify the nature of the damages, and argues that emotional distress allegations would not plead sufficient damages to recover under the Policy for a "bodily injury." Pl. Resp., ECF [72], at 10-11. The SAC does not specifically allege emotional distress allegations as a result of the false arrest and imprisonment, however, and the pleadings leave open the possibility of damages including "bodily injury." The Policy defines "bodily injury" to

13

include "bodily harm, sickness, or disease," and, construing ambiguous terms in favor of the insured, the Court must find that such injuries could include injuries suffered as a result of false arrest and imprisonment.

ii. *Cornerstone*

The SAC brings certain claims directly against Cornerstone and asserts that Cornerstone is vicariously liable for other claims: negligent employment and wrongful death for the hiring, training, and supervision of Gimbel (third claim for relief) negligence per se (fifth claim for relief), negligent infliction of emotional distress (eighth and ninth claims for relief), and negligence and personal injury (tenth claim for relief) directly, and vicarious liability for Gimbel's negligence and wrongful death (third claim for relief), and false arrest/imprisonment (seventh claim for relief).

Cornerstone argues that for purposes of determining plaintiff's duty to defend Cornerstone, it is Cornerstone's intent, and not Gimbel's, that matters. "When analyzing coverage for an 'insured' employer arising from intentional acts of an employee, it is the intent of the insured employer, not the intent of the intentional actor, which controls whether coverage exists." *TIG Ins. Co. v. Travelers Ins. Co.*, No. CV-00-1780-ST, 2003 WL 24051560, at *3 (D. Or. Mar. 24, 2003) (citing *Albertson's, Inc. v. Great Sw. Fire Ins. Co.*, 83 Or. App. 527, 531, 732 P.2d 916, 918 (1987), *rev. denied*, 303 Or. 332, 736 P.2d 566 (1987)). Oregon courts have found that because "claims of negligence or vicarious liability against employers for intentional acts by employees . . . are not premised on intentional harm by the employer," they are considered an "occurrence" or "accident." *Id.* at *4.

To the extent that the SAC pleads claims against Cornerstone related to the use of the insured vehicle, as discussed above, those claims are for vicarious liability for Gimbel's actions. The SAC does not allege that Cornerstone intended the damages resulting from Gimbel's actions. Accordingly, such damages result from an "unintended" accident from Cornerstone's perspective.

c. Expected or Intended Injury Exclusion

The policy excludes coverage for "[b]odily injury or property damage either expected by or caused intentionally by or at the direction of the insured." Policy 10. This exclusion requires essentially the same inquiry regarding intent demanded by the matter of whether the underlying incident was

14

"unintended" for purposes of defining an "accident" under the Policy. For the reasons discussed in the preceding subsection, the Court finds that the SAC pleads damages resulting from an unintended accident arising out of the use of an insured vehicle as to both Gimbel and Cornerstone and that, construing all terms in the Policy in favor of the insured, plaintiff has a duty to defend Gimbel and Cornerstone in the Nelson Lawsuit.

    2.    *Attorney Fees*

Cornerstone argues that it is entitled to attorney fees pursuant to Oregon Revised Statute ("ORS") § 742.061 and pursuant to the "Additional Payments" provision of the Policy. Cornerstone MSJ 21. ORS § 742.061(1) provides as follows:

> "[I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

Or. Rev. Stat. § 742.061(1). Attorney fee awards are not permitted under the state for an action for declaratory relief involving a duty to defend. *Travelers Prop. Cas. Co. of Am. v. Martella*, No. CV04176ST, 2005 WL 878584, at *1 (D. Or. Apr. 14, 2005). ORS § 742.061(1) requires the insured to show "(1) that settlement was not made within six months of the proof of loss; (2) that an action is brought upon the policy; and (3) that the plaintiff recovers more than the tender made by the defendant." *State Farm Fire & Cas. Co. v. Jensen*, 604 F. Supp. 3d 1096, 1111 (D. Or. 2022).

Cornerstone argues that it is owed fees related to costs in the Nelson Lawsuit. It states that it tendered the Nelson Lawsuit on February 2, 2022, constituting filing of proof of loss; that it received a notice that plaintiff had accepted the tender on March 3, 2022; and that for the interim month, it was forced to expend $2,394.50 on defense counsel. Cornerstone MSJ 22-23; Schroeder Decl. ¶ 3, Ex. 2 (email requesting reimbursement of defense fees). Cornerstone concedes that plaintiff paid these fees in July of 2023, but argues that because the payment was more than six months after the filing of proof of loss, it should still be permitted to recover under ORS § 742.061(1). Cornerstone MSJ 23. Plaintiff does not dispute the date of filing of proof of loss or tender, but notes that it never refused tender and that, at the

15

time of briefing, there was not yet recovery in the underlying action. Pl. Resp. 13.

Cornerstone argues that plaintiff's payment more than six months after the proof of loss should be considered an untimely tender, pointing to *Petersen v. Farmers Insurance Co. of Oregon*, 162 Or. App. 462, 986 P.2d 659 (1999). In *Peterson*, the court found that an untimely tender could not defeat an insured plaintiff's right to attorney fees under ORS § 742.061. That case, however, was in a different posture: the defendant insurer had made a tender, plaintiff had rejected it, plaintiff prevailed in her underlying trial, and only after resolution of the underlying suit did plaintiff seek an award for attorney fees. At the time of briefing, the Nelson Lawsuit is not yet resolved, and it is not yet evident if Cornerstone will have a greater obligation than what plaintiff ultimately tenders. And at the time of briefing, there are no outstanding attorney fees, as plaintiff reimbursed defendant for the costs expended between February and March of 2022. Accordingly, the motion for attorney fees in the underlying lawsuit under ORS § 742.061(1) is denied as premature.

Cornerstone also argues that it is entitled to recover attorney fees in this action under the Policy, asserting that costs incurred in responding to plaintiff's declaratory action should be understood as covered "reasonable expenses incurred by an insured at our request." Cornerstone MSJ 24-25. The term "request" is not defined in the Policy. Cornerstone argues that it should be interpreted to include a "request" to respond and participate in this declaratory judgment action. Cornerstone MSJ 24. Although Cornerstone does not provide any Oregon authority on the subject, it points to other state courts that have interpreted similar provisions to include attorney fees incurred in responding to an insurer's declaratory judgment action. *Id.* at 25. Plaintiff argues that the subsection of the Policy cited by Cornerstone must be read in context; it is located in "Part I – Liability to Others," a section addressing third party claims. Pl. Resp. 15.

There is no reasonable interpretation of the policy provision at issue supporting the assertion that Cornerstone incurred attorney fees at plaintiff's "request" when it opposed plaintiff's position that it did not owe a duty to defend. Plaintiff requested that the Court declare it has no duty to defend in the underlying action; Cornerstone sought denial of that request and made its own motion for a declaration that it was owed a defense, in direct contradiction to plaintiff's interests. The motion for attorney fees for

costs incurred in this action is denied. *See State Farm Fire & Cas. Co. v. Cedar Ave., LLC*, No. 3:23-cv-00634-JR, 2024 WL 2239523, at *8 (D. Or. May 16, 2024).

## CONCLUSION

For the foregoing reasons, defendants Matthew Cady, Jeffrey James, and TJ Lathrom's Motion for Stay of Plaintiff's Declaratory Claim With Regard to the Wolf Lawsuit, ECF [49], and Motion for Stay of Plaintiff's Declaratory Claim on Indemnity Coverage With Regard to the Nelson Lawsuit, ECF [51], are GRANTED. Plaintiff Artisan and Truckers Casualty Company's Motion for Summary Judgment, ECF [46], is DENIED with regard to the duty to defend in the Nelson Lawsuit. Defendants Matthew Cady, Jeffrey James, and TJ Lathrom's Motion for Partial Summary Judgment, ECF [62], is GRANTED with regard to the duty to defend in the Nelson Lawsuit and DENIED with regard to attorney fees.

The parties shall confer within thirty days of this order and inform the Court how they intend to proceed with regard to the Wolf Lawsuit. The parties shall confer within thirty days of resolution of the Nelson Lawsuit and file a status report.

IT IS SO ORDERED.

DATED this 30th day of September, 2024.

*Adrienne Nelson*
Adrienne Nelson
United States District Judge